JUDGE PRYOR
delivered the opinion oe the court.
On the 23d of October, in the year 1824, the trustees of Center College, located at Danville, Ky., ascertaining that the divines and elders of the Presbyterian Synod of Kentucky desired in behalf of their church to endow and patronize an institution of learning in the state, entered into a contract with the latter by which, it was agreed that so soon as the church or synod or any of its members should pay the sum of twenty thousand dollars into the treasury of the (then) board of trustees the Synod of Kentucky should have the right to elect the entire board of trustees for the institution, thereby placing the college, as soon as this money was paid, under the control and supervision of the Presbyterian Church. This agreement was faithfully complied with on the part of the church, and the" institution prospered under its care and patronage until the unfortunate social and political differences between its members growing out of the late war between the government and some of the states severed their religious association and divided the church. The synod met at Henderson, Ky., in October, 1866, and failing to harmonize, the result was a division among the members, and the organization of two bodies, each claiming to be the synod and also the right to elect trustees for Center College. One was known, or at least so denominated in the record, as the Douglas Synod, and the other as the Lapsley Synod; the former representing the Declaration and Testimony party, and the latter the Gen *537 eral Assembly party. Each one of the synods elected trustees for the college, and the appellants instituted this action in the court below, alleging that the trustees elected by the Lapsley Synod had usurped the offices of trustees of Center College, to which they (the plaintiffs) were legally entitled. Their petition was dismissed by the court below, and the only issue presented by the pleadings is, who are the rightful trustees, the appellants or appellees?
We have carefully considered all the points raised by each party to the record, more for the purpose of determining the power this court has of revising the action of these two ecclesiastical bodies than of preparing an elaborate opinion upon the questions involved.
In May, 1866, the General Assembly met at St. Louis, and passed resolutions in effect dissolving the presbyteries failing or refusing to adhere to the action of the General Assembly; and again in May, 1867, at its meeting in Cincinnati, declared that the Douglas Synod, which elected appellants trustees, was not the lawful synod of Kentucky, but that the Lapsley Synod was the true and lawful synod of the state. It is now insisted by counsel for appellants that this action of the General Assembly, both at St. Louis and Cincinnati, was in direct violation of the constitution upon which their church organization is based, and the exercise of a jurisdiction wholly unwarranted by any law pertaining to their church government; and the opinions heretofore delivered by this court in the cases of Watson and others v. Avery and others, and Gartin v. Penick (2 Bush, 360, and 5 Bush, 113), are relied on as sustaining this view of the questions presented.
In these cases the deliverances of the General Assembly, from which all these unfortunate troubles seem to have originated, are fully set forth, and so far as this case is concerned it is unnecessary to make any further allusion to them. This court, in the cases referred to, adjudged that while it could *538 not disturb tbe action of church courts upon matters purely religious, and was reluctant even to inquire into the alleged invalidity of church action with reference to the right of property, still civil tribunals, as a matter of right and justicé, based upon principle and authority, could interfere and rejudge the judgments of spiritual courts where property belonging to church organizations and dedicated for religious purposes had been taken from its members by the mere arbitrary will of those constituting the judicatures of such organizations, “without regard to any of the regulations or constitutional restraints by which, according to the principles and objects of such organizations, it was intended that such property rights should be protected;” that those having control of church property under a particular church organization have no power to transfer this property to a different sect or denomination, or divert it from the purposes for which it was dedicated, when in violation of the fundamental law upon which the organization is based.
This doctrine we again fully recognize, and to determine otherwise would be to leave the minority, with reference to the right of property in all voluntary associations, subject to the unlimited and despotic power of the majority, if they saw proper to exercise it.
It becomes necessary, however, in the present case to ascertain whether the principles thus announced are applicable to the facts presented in this record. The rights of the parties to the offices claimed, in our opinion, are not to be determined by the deliverances of the General Assembly made during or after the war, and individual views or prejudices that may exist by reason of the action on the part of the General Assembly toward a large majority of the members of the Presbyterian Church in Kentucky can have no weight in the consideration of this case. This branch of the controversy presented by the record has been discussed by some of the ablest divines in the *539 state, and is now a part of their church history — where it legitimately belongs.
The contract made in 1824 between the trustees of Center College and the Presbyterian Synod or Church was made part of the charter of the institution by legislative enactment. After giving to the church or synod the power to appoint trustees, it is provided by the contract as follows: “ The board may fill vacancies as before, but the appointments so made shall be subject to revision by the synod, and to confirmation or substitution by an appointment made by the synod, as that body shall determine. And to pi’event doubts about the body called the Synod of Kentucky, who shall be thus electors of trustees, it is understood that it is and shall be the body of the Presbyterian clergy and elders, in connection with the General Assembly of the Presbyterian Church in the United States of America, who meet annually as a synod in the state of Kentucky, of whatever individuals they may be composed at the time of their annual meeting, and as such are capable of being identified in fact at each meeting,” etc.
Here is a contract by its terms defining clearly the manner in which these trustees are to be elected, and in express words designating the body having the right to make this election. The language of this writing is “ that it shall be the body of the Presbyterian clergy in connection with the General Assembly of the United States of America,” etc. As each of these parties now claims the right to elect the trustees, it seems to us the only mode of determining the controversy is by resorting to the contract under which this right is asserted. This court has no power to alter or modify this solemn compact between the parties. The General Assembly of the Presbyterian Church in the United States of America has never ceased to exist. A body of Presbyterian clergy and elders have been in connection with it since the execution of the contract in 1824. The appellants, plaintiffs in the court below, do not claim to belong to *540 this General Assembly, Their petition, as well as the proof in the cause, shows that they belong to a separate and distinct organization, and claim only in their pleading that they, were lawfully elected “by the Synod of Kentucky of the Presbyterian Church of the United States.”
It is urged, however, that at the time the appellants were elected trustees they were still in connection with the General Assembly of the Presbyterian Church in the United States of America. This position, we think, is not sustained by the history of the division of the church as embodied in the record. The synod electing the appellants had previously refused to submit to what they conceived to be the despotic action of the General Assembly, and were no longer recognized by the latter body as the Synod of Kentucky; but whether this is so or not, the original compact provides that those of the clergy and elders in connection with this General Assembly, who meet annually as a synod in Kentucky, of -whatever individuals they may be composed at the time of their annual meeting, and as such are capable of being identified in fact at each meeting, shall have this power to elect. The evidence discloses the fact that at and after the meeting at Henderson the synod, under which the appellants claim their election, refused to recognize the General Assembly as having any control over its organization. Conceding then that the appellants were compelled to throw off all allegiance to this high power in their church by reason of its entire disregard of the organic law of their church government, and still it is no reason why this court should refuse to sustain the express provisions of a plain and positive contract. The parties to this covenant had some object in view when by its terms they so arranged as that the body to elect these trustees might always be identified. It may be that at that day they anticipated the existence at some future period in their church of rival religious organizations, and were endeavoring to provide against it; but whether *541 so or not, it is sufficient for this court to know that the contracting parties so stipulated.
There is no question made in this case as to the ownership of this property, or even for whom these trustees and those with whom they are associated are holding it, and this court, looking to the contract by which all the rights of the parties are to be determined, must adjudge that the court below acted properly in dismissing appellants’ petition.
The judgment is therefore affirmed.